# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MALIBU MEDIA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Case No. 3:19-cv-00807-M |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN DOE infringer using | ) | |
| IP address 45.30.78.146, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AND INCORPORATED MEMORANDUM OF LAW

[Remainder of page intentionally left blank]

# TABLE OF CONTENTS

**Statement of the Nature and Stage of the Proceedings** ................................................... 1

**Statement of the Issues and Standard of Review** ........................................................ 1

**I.    INTRODUCTION** ........................................................................... 3

**II.   FACTS** ..................................................................................... 4

   A.  Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business ............................................................... 4

   B.  Courts throughout the Country Have Expressly Found that Malibu Media Litigates in Good Faith ............................................................................ 6

   C.  Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously ............................. 7

   D.  The Infringer ........................................................................ 8

**III.  ARGUMENT** ................................................................................ 8

   A.  Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant ................................................................. 8

   B.  Good Cause Exists to Grant the Motion ........................................ 10

     1.  Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement .......... 10

       a.  *Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement* 13

     2.  Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery ....................................................................... 13

     3.  No Alternative Means Exist to Obtain Defendant's True Identity ................. 14

     4.  Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims 17

     5.  Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous .................................. 18

   C.  Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction ......................................................................... 19

**IV.   CONCLUSION** ............................................................................ 19

eso

## TABLE OF AUTHORITIES

**Cases**

*Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010)....................................9, 18

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).......................................................................10

*Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009)................................10

*Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) ..........10

*Clear Skies Nev., LLC v. Doe*, No. 16-1511, 2016 U.S. Dist. LEXIS 36187 (E.D. La. Mar. 18, 2016)......................................................................................................................14

*Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993)............................10

*Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007).....................18

*Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522 (N.D. Tex. Jan. 22, 2013)..................................................................................................2, 9

*Davis v. Kelly*, 160 F.3d 917, 921 (2d Cir. 1998)................................................................9

*Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) ....................................................10

*Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 769 (S.D. Tex. 2013) ..................13

*Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838 (S.D.N.Y. May 15, 2012)...............................................................................................19

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)..............................10

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007)....................................................10

*In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003) ..................................11

*K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803 (S.D. Tex. Mar. 8, 2012).....19

*Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) ..............................................................10

*Lennar Homes of Tex. Sales & Mktg. v. Perry Homes, LLC*, 117 F. Supp. 3d 913, 922 (S.D. Tex. 2015)...........................................................................................................12

*Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980)..........................................................10

*Malibu Media LLC v. Doe*, No. 12-1342, 2012 U.S. Dist. LEXIS 167001 (C.D. Ill. Nov. 26, 2012)......................................................................................................................16

*Malibu Media v. John Doe*, 15-cv-3504 (E.D.N.Y August 23, 2016) ..............................13

*Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 99332 (S.D.N.Y. July 16, 2013) ...11, 13

*Malibu Media, LLC v. Doe*, 2015 U.S. Dist. LEXIS 94054 (S.D.N.Y. July 20, 2015) ....16

*Malibu Media, LLC v. Doe,* Civil Action No. 12-cv-02598-REB-MEH, 2013 U.S. Dist. LEXIS 59277 (D. Colo. Feb. 12, 2013) .........................................................................6

*Malibu Media, LLC v. Doe*, Civil Action No. 15-8252 (FLW), 2016 U.S. Dist. LEXIS 92069 (D.N.J. July 14, 2016) .......................................................................................17

*Malibu Media, LLC v. Doe*, No. 1:12-CV-263, 2012 U.S. Dist. LEXIS 170987 (N.D. Ind. Dec. 3, 2012) ................................................................................................... 18

*Malibu Media, LLC v. Doe*, No. 1:15-cv-00366 (E.D. Va. July 23, 2015) ...................... 13

*Malibu Media, LLC v. Doe*, No. 14-cv-00223-MJG, 2014 U.S. Dist. LEXIS 130914 (D. Md. Sep. 18, 2014) ...................................................................................................... 7

*Malibu Media, LLC v. Does,* 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013) ........................... 6

*Malibu Media, LLC v. Harris,* No. 1:12-cv-1117-WTL-MJD, 2013 U.S. Dist. LEXIS 100350 (S.D. Ind. July 18, 2013) ................................................................................ 13

*Malibu Media, LLC v. John Does 1, 6, 13, 14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ............................................................................................................................. 12

*Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012) .................. 6

*Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP (M.D. Fla. July 6, 2012) ........................................................................................................................... 7

*Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015) .......................... 10

*Montoya v. FedEx Ground Package System, Inc*., 614 F.3d 145, 148 (5th Cir. 2010) ..... 13

*Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) .......................................................... 10

*Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) ..................... 14

*Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) .................................... 10

*Raw Films, Ltd. v. Does*, No. 11-7248, 2012 U.S. Dist. LEXIS 41645 (E.D. Pa. Mar. 23, 2012) ........................................................................................................................... 18

*Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ................... 14

*Spectrum Creations, Inc. v. Catalina Lighting, Inc*., CIVIL ACTION NO. SA-00-CA-875-FB, 2001 U.S. Dist. LEXIS 11861 (W.D. Tex. July 31, 2001) .............................. 12

*St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011) .................................................................................................................. 9, 10, 17

*United States v. Allen*, 625 F.3d 830, 841 (5th Cir. 2010) ............................................... 15

*United States v. Baker,* 538 F.3d 324, 326 (5th Cir. 2008) ............................................... 15

*United States v. Orisakwe,* 624 F. App'x 149, 152 (5th Cir. 2015) ................................... 15

*United States v. Richardson,* No. 4:11CR3116, 2012 U.S. Dist. LEXIS 454 (D. Neb. Jan. 3, 2012) ....................................................................................................................... 19

*United States v. Roetcisoender*, 792 F.3d 547, 549 (5th Cir. 2015) ................................. 15

*United States v. Tillotson*, 2:08-CR-33, 2008 WL 5140773 (E.D. Tenn. Dec. 2, 2008) .. 19

*Voltage Pictures, LLC v. Doe,* Civil Action No. 13-cv-01121-WYD-MEH, 2013 U.S. Dist. LEXIS 111132 (D. Colo. Aug. 7, 2013) ............................................................ 16

*Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm Identified*, 2012 U.S. Dist. LEXIS 137272 (S.D. Tex. Sept. 24, 2012) ...................... 2, 9

*Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) ......................... 10

**Statutes**

17 U.S.C. § 410(c) .................................................................................................. 11

17 U.S.C. §106 ...................................................................................................... 11

**Rules**

Fed. R. Civ. P. 26(d)(1) ....................................................................................... 3, 8

## Statement of the Nature and Stage of the Proceedings

This is a copyright infringement action brought against a John Doe Defendant known to Plaintiff only by the Internet Protocol ("IP") address he/she used to complete the infringement of Plaintiff's works (the "Subject IP Address").  Defendant is a long-term copyright infringer and was recorded infringing Plaintiff's content through the BitTorrent protocol.  Because Plaintiff knows Defendant only by the IP address used to complete infringement, Plaintiff seeks leave to serve a subpoena on the Internet Service Provider ("ISP") that administers that IP address, so that it may learn the ISP account subscriber's name and address, and complete investigation into whether the subscriber is the infringer, or whether the subscriber has information calculated to lead to the discovery of the infringer, so that a Defendant may be particularly named and served with an Amended Complaint in this action.

## Statement of the Issues and Standard of Review

Issue 1:  Should Plaintiff be granted leave to serve a subpoena on Defendant's ISP so that it may identify a Defendant with particularity?

Standard of Review: Plaintiff must demonstrate that it has "good cause" to serve a subpoena prior to a Rule 26(f) conference.  To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy. *See Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm*

MOTION FOR LEAVE                          1

*Identified*, 2012 U.S. Dist. LEXIS 137272, *3 (S.D. Tex. Sept. 24, 2012) (citing *Arista Records*, 604 F.3d at 114); *Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522, at *12 (N.D. Tex. Jan. 22, 2013) (same).

## MOTION FOR LEAVE TO SERVE A THIRD PARTY SUBPOENA PRIOR TO A RULE 26(f) CONFERENCE AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed. R. Civ. P. 26(d)(1), and upon the attached: (1) Declaration of Colette Pelissier in support of this motion; (2) Declaration of Patrick Paige in support of this motion; and (3) Declaration of Tobias Fieser in support of this motion, Malibu Media, LLC ("Plaintiff"), respectfully moves for entry of an order granting it leave to serve a third party subpoena on AT&T Internet Services, prior to a Rule 26(f) conference (the "Motion").  A proposed order is attached for the Court's convenience.

## I.    INTRODUCTION

Plaintiff, Malibu Media, (d/b/a "X-art.com") operates a popular subscription based website.[1]  Plaintiff creates its own content which is being infringed on a massive scale. The Subject  IP address has been habitually used to infringe Plaintiff's copyrighted works. Accordingly, Plaintiff seeks leave to serve limited, immediate discovery on the Subject IP Address's ISP, AT&T Internet Services ,so that Plaintiff may complete investigation that might lead to Defendant's true identity.  Plaintiff is suing Defendant for using the Internet, specifically the BitTorrent file distribution network, to commit direct copyright infringement.

Because Defendant used the Internet to commit this infringement, Plaintiff only knows Defendant by the IP address used to complete the infringement.  The Subject IP address is assigned by the ISP.  Accordingly, the ISP can use the Subject IP address to

---

[1] *See, e.g.*, Declaration of Colette Pelissier, Appendix pp. 2-8.

identify the subscriber to the ISP account to which the Subject IP address is assigned.[2] Indeed, ISPs maintain internal logs, which record the date, time, and customer identity for each IP address assignment made by that ISP.  Significantly, ISPs may maintain these logs for only a short period of time.[3]

Plaintiff seeks leave of Court to serve a Rule 45 subpoena on the ISP that assigned the Subject IP address.  This subpoena will demand the true name and address of the subscriber to that ISP account.  Plaintiff will only use this information to investigate and prosecute the claims made in its Complaint.  Without this information, Plaintiff cannot investigation to determine the natural person responsible for the infringing behavior, nor can Defendant pursue this lawsuit to protect its valuable copyrights.

## II.   FACTS

### A.   <u>Online Copyright Infringement Through the BitTorrent Protocol is a Serious and Significant Threat to Plaintiff's Business</u>

Colette Pelissier is the owner of Malibu Media.  *See* Appendix p. 3 at ¶ 3.  Ms. Pelissier developed the X-Art.com business plan in 2010 while still working full time as a realtor in the Los Angeles market.  *Id*. at ¶ 4.  X-Art.com was created to address the lack of artistically produced adult oriented content suitable for upscale women and couples.  *Id*. Ms. Pelissier chose the name 'X-Art' to reflect her artistic aspirations, and began investing

---

[2] *See, e.g.*, Declaration of Patrick Paige, attached hereto as Appendix pp. 9-19.
[3] *See, e.g.*, Statement Of Jason Weinstein Deputy Assistant Attorney General Criminal Division Before The Committee On Judiciary Subcommittee On Crime, Terrorism, And Homeland Security United States House Of Representatives, (January 2011) at http://www.justice.gov/sites/default/files/testimonies/witnesses/attachments/01/25/11//01-25-11-crm-weinstein-testimony-re-data-retention-as-a-tool-for-investigating-internet-child-pornography-and-other-internet-crimes.pdf, stating: "Some [ISP] records are kept for weeks or months; others are stored very briefly before being purged."

all of her available money and resources into the production of content – particularly erotic movies with high production value and a cinematic quality. *Id.* at ¶ 8. She knew that the adult content industry was in financial crisis, and the odds of success for a new adult website were low. *Id.*

Despite the odds, her vision has come to fruition. Currently X-Art.com has tens of thousands of paying subscribers, but Malibu Media is finding it hard to grow and maintain the memberships when so many of the movies are being distributed for free, without authorization, by users of the Bittorrent Network. *See generally id.* As X-Art's subscriber base has grown, production expenditures have also grown. *Id.* at ¶ 9. Plaintiff spends over two million dollars a year producing content, and millions more each year to run the business. *Id.* For the first several years of operation, X-Art did not have significant issues with piracy. *Id.* at ¶ 10. However, once Plaintiff's content became well known and highly desirable, X-Art movies started ranking as the most downloaded adult content on several of the most popular torrent websites. *Id.* Malibu Media invests significant resources into pursuing all types of anti-piracy enforcement, such as Digital Millennium Copyright Act ("DMCA") takedown notices and direct efforts aimed at infringing websites. *Id.* at ¶ 21. Malibu Media is even working with law enforcement to stop the piracy of its movies. *Id.* Despite sending thousands of DMCA notices per week, the infringement continues. *Id.* at ¶ 22. And, if one searches for "X-Art" on a torrent website, the site will reveal thousands of unauthorized torrents available for free. *Id.* Plaintiff Malibu Media has filed suit in this judicial district and in judicial districts across the country seeking to deter and stop the infringement.

Plaintiff won the first ever BitTorrent copyright infringement lawsuit to reach trial. *Malibu Media, LLC v. Does,* 950 F. Supp. 2d 779, 788 (E.D. Pa. 2013).    In his Memorandum Report after the conclusion of the trial, the Honorable Judge Baylson made a number of significant findings.  Importantly, Judge Baylson found "Malibu has satisfied its burden of proof with substantial evidence and deserves a large award." *Id.*

B.   <u>Courts throughout the Country Have Expressly Found that Malibu Media Litigates in Good Faith</u>

Judge Baylson expressly emphasized that "Malibu is *not* what has been referred to in the media and legal publications, and in the internet blogosphere, as a 'copyright troll' . . . .   Rather, Malibu is an actual producer of adult films and owns valid copyrights, registered with the United States Copyright Office, in its works."  *Id.* (emphasis in original).  The Honorable Judge Hegarty of the District of Colorado has also acknowledged Plaintiff's good faith and stated: "the Court has . . . witnessed firsthand the Plaintiff's willingness to resolve cases without any monetary payment when a Defendant credibly denies infringement."  *E.g.*, *Malibu Media, LLC v. Doe,* Civil Action No. 12-cv-02598-REB-MEH, 2013 U.S. Dist. LEXIS 59277, at *22 n.3 (D. Colo. Feb. 12, 2013).

Other courts have opined that the criticism often attributed to filers of BitTorrent lawsuits is unwarranted when directed at Plaintiff.  "[N]one of the instances of improper litigation tactics that have been brought to our attention involve plaintiff or plaintiff's counsel.  We are reluctant to prevent plaintiff from proceeding with its case based only on a 'guilt-by-association' rationale." *Malibu Media, LLC v. John Does 1-5*, 285 F.R.D. 273, 278 (S.D.N.Y. 2012).   "[Defendant] has not presented any evidence that Malibu has

engaged in harassing behavior for the Court to consider, nor has the Court observed bad faith behavior or the use of improper tactics on its part thus far." *Malibu Media, LLC v. Doe, 291 F.R.D. 191, 208 (N.D. Ill. 2013); Malibu Media, LLC v. John Does 1-9*, 8:12-cv-00669-SDM-AEP [CM/ECF 25] *7 (M.D. Fla. July 6, 2012) (same); *Malibu Media, LLC v. Doe,* No. 14-cv-00223-MJG, 2014 U.S. Dist. LEXIS 130914, at *3 (D. Md. Sep. 18, 2014) ("Malibu has complied with these procedures and this Court is unaware of *any* allegations of abuse.").

C. <u>Plaintiff Does Not Solicit Settlements Prior to Serving a Defendant and Always Consents to Allowing a John Doe Defendant to Proceed Anonymously</u>

Plaintiff has filed this suit for the sole purpose of protecting and enforcing its copyrights.

> We do not seek to use the Court system to profit from the infringement, the way some people suggest. As previously stated, revenues from subscriptions to X-Art.com are by far and away the dominant driver of Malibu Media's business. We want the infringement to stop. The purpose of these lawsuits is to motivate people to pay for subscriptions by deterring infringement and seek some reasonable compensation for the massive amount of infringement of our copyrights.

Appendix p.7 at ¶ 25. Plaintiff has no intention of embarrassing a defendant because of the content of the works at issue and has instructed all of its counsel to always consent to allowing defendants to proceed anonymously through discovery. Further, Plaintiff does not extend settlement offers prior to serving a defendant with the complaint and in all of its individual suits against a defendant, has only settled prior to serving when the defendant has initiated the request. Should the Court wish to include language in its Order preventing Plaintiff from initiating settlements with Defendant and allowing Defendant to proceed

anonymously, Plaintiff will not object.

D.   <u>The Infringer</u>

The Subject IP address was used to infringe 12 of Plaintiff's copyrighted movies between 10/20/2017 and 01/21/2019.  *See* Exhibit A to Complaint.  By downloading each of these movies through the BitTorrent protocol, Defendant simultaneously distributes these movies to others, allowing other people to also steal Plaintiff's movies.  *See* Complaint, at ¶¶ 11–25.

The length of time which Plaintiff's investigator recorded Defendant utilizing the BitTorrent protocol to download and distribute works on the Internet demonstrates that the Infringer was not a mere guest or passerby.  It was someone with access to the Subject IP address for a long period of time, consistently.  Therefore, in many cases the subscriber to the ISP account may himself/herself be the infringer; or, in other cases, the subscriber to the ISP account is reasonably calculated to have information leading to the discovery of the infringer's identity.  In all cases, without the discovery of the contact information for the ISP subscriber no good faith investigation may be undertaken by Plaintiff, and there would be no way for Plaintiff to enforce its copyrights against the rampant infringement occurring on BitTorrent.

## III.   ARGUMENT

A.   <u>Legal Standard Governing Expedited Discovery Requests To Identify An Anonymous Defendant</u>

Except for circumstances not applicable here, a party may not propound discovery in advance of a Rule 26(f) conference absent court order.  *See* FED. R. CIV. P. 26(d)(1).

Since the identification of the infringer is "*indispensable* for the vindication of [a] plaintiff's copyright rights," courts readily authorize expedited discovery in online copyright infringement cases. *Arista Records, LLC v. Doe*, 604 F.3d 110, 115 (2d Cir. 2010). Indeed, this district has adopted the "good cause" standard for expedited discovery, which, in essence, is "akin to a broader and more flexible totality of the circumstances analysis." *St. Louis Group, Inc. v. Metals & Additives Corp.*, 275 F.R.D. 236, 239 (S.D. Tex. 2011). *See also id.* at 240 (citing several cases throughout the Fifth Circuit that have also adopted this good cause approach).

To satisfy this standard, a plaintiff need only (1) make a *prima facie* showing of a claim of copyright infringement; (2) submit a specific discovery request; (3) credibly allege an absence of alternative means to obtain the requested discovery; (4) sufficiently articulate a central need for the subpoenaed information; and (5) viably show that the defendant has a minimal expectation of privacy. *See Well Go USA, Inc. v. Unknown Participants Participants in Filesharing Swarm Identified*, 2012 U.S. Dist. LEXIS 137272, *3 (S.D. Tex. Sept. 24, 2012) (citing *Arista Records*, 604 F.3d at 114); *Combat Zone Corp. v. Does*, No. 3:12-CV-3927-B, 2013 U.S. Dist. LEXIS 8522, at *12 (N.D. Tex. Jan. 22, 2013) (same).

Federal Circuit Courts have consistently approved of this procedure of using expedited discovery to identify anonymous defendants. For example, the Second Circuit stated in *Davis v. Kelly* that "courts have rejected the dismissal of suits against unnamed defendants . . . identified only as 'John Doe's . . . until the plaintiff has had some opportunity for discovery to learn the identities." 160 F.3d 917, 921 (2d Cir. 1998)*; see*

*Green v. Doe*, 260 Fed. Appx. 717, 719 (5th Cir. 2007) ("Although the use of a "John Doe" is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants.") (citing *Colle v. Brazos County, Tex.*, 981 F.2d 237, 243 n.20 (5th Cir. 1993)). *See also*, *Penalbert-Rosa v. Fortuno-Burset*, 631 F.3d 592 (1st Cir. 2011) ("A plaintiff who is unaware of the identity of the person who wronged her can . . . proceed against a 'John Doe' . . . when discovery is likely to reveal the identity of the correct defendant."). *Accord Blakeslee v. Clinton Cnty*, 336 Fed. Appx. 248, 250 (3d Cir. 2009) (same); *Brown v. Owens Corning Inv. Review Comm.*, 622 F.3d 564, 572 (6th Cir. 2010) (same); *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980) (same); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985) (same); *Young v. Transp. Deputy Sheriff I*, 340 Fed. Appx. 368 (9th Cir. 2009) (same); *Krueger v. Doe*, 162 F.3d 1173 (10th Cir. 1998) (same); *Dean v. Barber*, 951 F.2d 1210, 1215 (11th Cir. 1992) (same).  Courts have "routinely" granted expedited discovery requests in infringement cases so long as the moving party can show good cause. *St. Louis Group, Inc.*, 275 F.R.D. at 241.  Moreover, the Eleventh Circuit found that Malibu Media's lawsuits "properly served the purposes of the Copyright Act." *Malibu Media, LLC v. Pelizzo*, 604 F. App'x 879, 881 (11th Cir. 2015).

B.  Good Cause Exists to Grant the Motion

1.  *Plaintiff Has Alleged a Prima Facie Claim for Copyright Infringement*

To sufficiently state a *prima facie* claim of infringement, Plaintiff must merely plausibly allege: (1) ownership of a valid copyright and (2) unauthorized copying of original elements of the copyrighted work.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  Plaintiff's Complaint

meets these requirements:

30. Plaintiff is the owner of the Copyrights-in-Suit, as outlined in Exhibit B, each of which covers an original work of authorship.

31. By using BitTorrent, Defendant copied and distributed the constituent elements of each of the original works covered by the Copyrights-in-Suit.

32. Plaintiff did not authorize, permit or consent to Defendant's distribution of its works.

Complaint at ¶¶ 30–32.  *See* 17 U.S.C. §106; *In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003), *cert. denied*, 124 S. Ct. 1069 (2004) ("Teenagers and young adults who have access to the Internet like to swap computer files containing popular music. If the music is copyrighted, such swapping, which involves making and transmitting a digital copy of the music, infringes copyright."); *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 99332, at *15 (S.D.N.Y. July 16, 2013) ("Plaintiff has made a concrete, prima facie case of copyright infringement by alleging ownership of the registered copyright and alleging unlawful downloading, copying, and distribution of this work by specifying the type of technology used, the IP address from which the file was accessed and shared, and the date and time of the infringement.").

Since Plaintiff obtained copyrights for its works from the United States Register of Copyrights, *see* CM/ECF 1-2 (providing registration numbers), it establishes *prima facie* evidence that its works are copyrightable and validly copyrighted.  *See* 17 U.S.C. § 410(c); "Copyright certificates of registration 'constitute prima facie evidence of the validity of the copyright[s].'" *Spectrum Creations, Inc. v. Catalina Lighting, Inc.,* CIVIL ACTION NO.

SA-00-CA-875-FB, 2001 U.S. Dist. LEXIS 11861, at *21 (W.D. Tex. July 31, 2001).[4]

Further, Plaintiff's *prima facie* allegations of infringement are attested to by Plaintiff's

investigator, IPP International UG employee, Tobias Fieser.  *See* Declaration of Tobias

Fieser in Support of Plaintiff's Motion for Leave to Serve Third Party Subpoenas Prior to

a Rule 26(f) Conference ("Fieser Declaration"), at ¶¶ 9-14, attached hereto as Appendix

pp. 22-23.  And, each digital file, as identified by a unique cryptographic file hash value,

has been verified to be a copy or contain copies of one of Plaintiff's copyrighted works.

Indeed, the infringement detection system Plaintiff uses to identify infringers has

been tested and deemed valid. *See generally* Declaration of Patrick PaigeAppendix pp.9-

19.  During the first ever BitTorrent copyright lawsuit to reach trial, Judge Baylson likewise

concluded Plaintiff's technology was valid.  *See Malibu Media, LLC v. John Does 1, 6, 13,*

*14*, 950 F. Supp. 2d 779, 782 (E.D. Pa. 2013) ("I concluded that Malibu had expended

considerable effort and expense to determine the IP addresses of the infringing parties, and

the technology employed by its consultants—both of whom were located in Germany and

who testified at the trial of June 10, 2013—was valid.").  Recently, the Eastern District of

New York held an evidentiary hearing evaluating technology used by Plaintiff and found

"[Plaintiff's expert] offered credible testimony regarding the methods … used on behalf of

Malibu Media in identifying the Doe Defendant's IP address as an infringer of its

---

[4] "The effect of such a certificate is to place the **burden** of proof on the alleged infringer to
disprove the validity of the copyright." *Lennar Homes of Tex. Sales & Mktg. v. Perry Homes,*
*LLC*, 117 F. Supp. 3d 913, 922 (S.D. Tex. 2015).

copyrighted material.   Accordingly, Plaintiff's allegations and evidence submitted in support thereof are sufficient at this juncture to establish a prima facie claim for copyright infringement against Defendant." *Malibu Media v. John Doe*, 15-cv-3504 (E.D.N.Y August 23, 2016).

> a. *Plaintiff Sufficiently and Plausibly Connects Defendant To The Infringement*

Since plausibility is the standard, "proof is not required to properly plead a claim for copyright infringement," and Plaintiff does not need to establish with 100% certainty that the individual assigned the infringing IP address, is the infringer. *Malibu Media, LLC v. Harris,* No. 1:12-cv-1117-WTL-MJD, 2013 U.S. Dist. LEXIS 100350, at *7 (S.D. Ind. July 18, 2013).  Plaintiff must only plead enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *see Deniece Design, LLC v. Braun*, 953 F. Supp. 2d 765, 769 (S.D. Tex. 2013) (citing *Montoya v. FedEx Ground Package System, Inc*., 614 F.3d 145, 148 (5th Cir. 2010)).  Consequently, Plaintiff's well-pled allegations constitute "a concrete, *prima facie* case of copyright infringement." *Malibu Media, LLC v. Doe*, 2013 U.S. Dist. LEXIS 99332, at *15 (S.D.N.Y. July 16, 2013); *see also, e.g.*, *Malibu Media, LLC v. Doe*, No. 1:15-cv-00366, CM/ECF 16 (E.D. Va. July 23, 2015) ("It is reasonable to draw the inference that the party responsible for downloading . . . was the party responsible for the internet connection. Malibu Media is not required to prove its case at the pleading stage").

> 2. *Plaintiff Has Clearly Identified Specific Information It Seeks Through Discovery*

Plaintiff seeks to discover from the ISP the true name and address of the subscriber

to the ISP account that was assigned the Subject IP address during the period of recorded infringement.  This is all specific information in the possession of the ISP that will enable Plaintiff to investigate the identity of the proper Defendant and serve process on the proper Defendant.  This limited and specific request satisfies the second good cause factor because it only seeks that which is necessary to enable Plaintiff to effectuate service on a proper Defendant and proceed with this lawsuit.  "Given the allegedly high level of BitTorrent activity associated with [defendant], the Court is persuaded that although it is possible that "the infringer might be someone other than the subscriber," that is not the most likely scenario." *Clear Skies Nev., LLC v. Doe*, No. 16-1511, 2016 U.S. Dist. LEXIS 36187, at *10-11 (E.D. La. Mar. 18, 2016).

### 3.   *No Alternative Means Exist to Obtain Defendant's True Identity*

There are no publicly-available databases or "yellow pages" that can identify an individual by an IP address; Plaintiff knows Defendant only by the IP address he or she used to complete the infringment.  The government, law enforcement officials, criminal and civil judges, and ISPs alike all acknowledge that subpoenaing an ISP is the only way to identify an internet subscriber.  Congress has also so found, and has expressly created this system for copyright holders to subpoena ISPs in order to identify copyright infringers.[5]

---

[5] Major record labels and film studios also enforce their copyrights against piracy in the federal court system in this way.  *See, e.g.*, *Sony BMG Music Entm't v. Tenenbaum*, 660 F.3d 487, 492 (1st Cir. 2011) ("Shortly after peer-to-peer networks first appeared, plaintiffs acknowledged the threat they posed to their industry and initiated a broad campaign to address the illegal infringement of copyrighted materials."); *Paramount Pictures Corp. v. Davis*, 234 F.R.D. 102, 104 (E.D. Pa. 2005) ("With the aid of other technological developments, the internet also has afforded users with opportunities to infringe on the rights of owners of copyrighted works, including motion pictures.").

People using the Internet are anonymous to the public, but the ISPs responsible for assigning any given IP address "know who an address is assigned to and how to get in contact with them."[6]  ISPs' records "are the **only available evidence** that allows us to investigate who committed crimes on the Internet.  They may be the **only way to learn, for example, that a certain Internet address was used by a particular human being** to engage in or facilitate a criminal offense."[7]

The Government—and law enforcement in particular—also acknowledges that issuing a subpoena to the responsible ISP is the only way to identify the subscriber of an IP address.  Plaintiff's forensics expert has affirmed that during the eleven years he spent investigating computer crimes, the government *__always__* had to obtain subscribers' identifying information from ISPs.  *See* Appendix p. 13 at ¶¶ 13–16.  And, every single case that Plaintiff has reviewed supports this conclusion.  *See, e.g.*, *United States v. Baker,* 538 F.3d 324, 326 (5th Cir. 2008) (subpoenaing an ISP to identify IP address subscriber); *United States v. Orisakwe,* 624 F. App'x 149, 152 (5th Cir. 2015) (same); *United States v. Wyss*, 542 F. App'x 401, 403 (5th Cir. 2013) (same); *United States v. Allen*, 625 F.3d 830, 841 (5th Cir. 2010) (same); *United States v. Roetcisoender*, 792 F.3d 547, 549 (5th Cir. 2015) (same).  District courts across the country likewise recognize this, routinely explaining "the Court can think of no other reasonable way of discovering the infringer than by permitting Plaintiff discovery into the identity of Doe."  *Voltage Pictures, LLC v.*

---

[6]  *Beginner's   Guide   to   Internet   Protocol   (IP)   Addresses*  at  p.  4,  available  at https://www.icann.org/en/system/files/files/ip-addresses-beginners-guide-04mar11-en.pdf.;  *American Registry for Internet Numbers Number Resource Policy Manual* at 4.2, available at https://www.arin.net/policy/nrpm.html#four2.
[7] Statement from Jason Weinstein, n.3, *supra*.

*Doe,* Civil Action No. 13-cv-01121-WYD-MEH, 2013 U.S. Dist. LEXIS 111132, at \*9 (D. Colo. Aug. 7, 2013).  In fact, a court very recently reaffirmed this point in the context of one of Plaintiff's cases, denying a motion to quash and explaining that "subpoenaing the ISP . . . is the *only* means to obtain identifying information" *Malibu Media, LLC v. Doe,* 2015 U.S. Dist. LEXIS 94054, at \*4 (S.D.N.Y. July 20, 2015).  *See also John Wiley & Sons, Inc.,* 284 F.R.D. at 190 ("[Plaintiff] has explained that the use of the BitTorrent software is 'largely anonymous' except insofar as it requires a user to broadcast the user's IP address . . . . [Plaintiff] has established that it lacks the means to obtain the subscriber's identifying information, other than by subpoena."); *Sony Music Ent., Inc.,* 326 F. Supp. 2d at 566 (finding no other method to obtain information than by subpoena under similar circumstances); *Malibu Media LLC v. Doe,* No. 12-1342, 2012 U.S. Dist. LEXIS 167001, at \*4 (C.D. Ill. Nov. 26, 2012) ("Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy.").

Prior to seeking leave to subpoena AT&T Internet Services, Plaintiff searched for the Subject IP address on various web search tools, including basic search engines like http://www.google.com. Plaintiff further conducted its own research on its ability to identify a Defendant by reviewing numerous sources of authority, most of which have been discussed above (*e.g.*, legislative reports, agency websites, informational technology guides, governing case law, etc.).  Plaintiff also discussed the issue at length with its computer forensics investigator—an individual who was tasked with the responsibility of

investigating and identifying cybercriminals for over ten years.  *See generally* Declaration of Patrick Paige, Appendix pp. 9-19.  And, Plaintiff discussed these issues with at least two different ISPs.[8]   In short, there is no way to obtain the identity of an Internet subscriber except from investigation through the IP address subscriber's ISP.

### 4.    *Plaintiff Needs the Subpoenaed Information to Advance the Asserted Claims*

Without learning the Defendant's true identity, Plaintiff will not be able to serve the Defendant with process and proceed with this case.  Plaintiff's important statutorily protected property rights are at issue in this suit and, therefore, the equities weigh heavily in favor of preserving Plaintiff's rights.  That is, "[w]ithout Defendant's identifying information, Plaintiff would be unable to enforce its rights over the named copyrighted works." *Malibu Media, LLC v. Doe*, Civil Action No. 15-8252 (FLW), 2016 U.S. Dist. LEXIS 92069, at *11 (D.N.J. July 14, 2016).  Indeed, as set forth above, Plaintiff has chosen to file suit only against the worst of the worst infringers – *i.e.* those that have repeatedly stolen Plaintiff's content over a long period of time.

Because identifying Defendant by name is necessary for Plaintiff to advance the asserted claims, Plaintiff has established the fourth good cause factor.  *See St. Louis Group, Inc.*, 275 F.R.D. at 241 (noting "some courts have allowed limited, expedited discovery when failing to do so would have substantially impacted the case from progressing on the court's docket).

---

[8] The ISPs with whom Plaintiff consulted confirmed their unique ability to identify their Internet subscribers, but neither were willing to provide an affidavit absent court order.  Should these communications be pertinent to the Court's analysis, Plaintiff can supply them upon request.

5. *Plaintiff's Interest in Knowing Defendant's True Identity Outweighs Defendant's Interest in Remaining Anonymous*

Finally, Plaintiff satisfies the fifth good cause factor because Plaintiff has a strong, legitimate, and Constitutionally-protected interest in protecting its copyrights. Defendant, on the other hand, is a systematic copyright infringer—who may only be discovered therough the subscriber to an IP address that is being used to infringe copyrights. As a matter of law, Internet subscribers do not have a legitimate expectation of privacy in allowing their wireless Internet connections to be used to anonymously and illegally distribute copyrighted content. *See, e.g. Raw Films, Ltd. v. Does*, No. 11-7248, 2012 U.S. Dist. LEXIS 41645, at *15 (E.D. Pa. Mar. 23, 2012); *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 452 (C.D. Cal. 2007). Nor does Defendant or the subscriber to the Subject IP address have an expectation of privacy in his/her identifying information "because [that information] has already been exposed to a third party, the Internet Service Provider." *Malibu Media, LLC v. Doe*, No. 1:12-CV-263, 2012 U.S. Dist. LEXIS 170987, at *1 (N.D. Ind. Dec. 3, 2012). Defendant's desire to remain anonymous is necessarily outweighed by Plaintiff's legal rights, so too is the ISP subscriber's right to remain anonymous while investigation of this claim is ongoing. *See Arista Records, LLC*, 604 F.3d at 117, 124 ("[T]o the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected"); *John Wiley & Sons*, 284 F.R.D. at 191 ("ISP subscribers have a minimal expectation of privacy in the transmission or distribution of copyrighted material.").

C.    Plaintiff Used Geolocation Technology to Make a Prima Facie Case of Personal Jurisdiction

As set forth in Plaintiff's Complaint, "Plaintiff used proven IP address geolocation technology which has consistently worked in similar cases to ensure that the Defendant's acts of copyright infringement occurred using an Internet Protocol address ("IP address") traced to a physical address located within this District". *See* Complaint at ¶ 5. Specifically, Plaintiff used Maxmind® Premium's IP geolocation database to determine that Defendant properly resided in a location both within the state of Texas and this district.

Other courts have recognized that "[w]hile such publicly available IP locators are not 100% accurate, they have been accepted as making out a prima facie case of personal jurisdiction." *Digital Sins, Inc. v. John Does 1-245*, No. 11 CIV. 8170 CM, 2012 WL 1744838, at *4 (S.D.N.Y. May 15, 2012). *Cf. K-Beech, Inc. v. Does 1-41*, 2012 U.S. Dist. LEXIS 31803, *4 (S.D. Tex. Mar. 8, 2012) (accepting IP address methodology as a means to identify infringers, but denying joinder of defendants).   From Plaintiff's experience, Maxmind's Geolocation database has consistently predicted the location of the Defendant 99% of the time.   Indeed, this exact geolocation technology has also been relied upon by federal law enforcement.   *See United States v. Tillotson,* No. 2:08-CR-33, 2008 U.S. Dist. LEXIS 120701, at *5 (E.D. Tenn. Nov. 13, 2008) (E.D. Tenn. Dec. 2, 2008) (noting that Maxmind's database correctly identified the Defendant and is sufficient to establish probable cause); *United States v. Richardson,* No. 4:11CR3116, 2012 U.S. Dist. LEXIS 454, at *4 (D. Neb. Jan. 3, 2012*)* (used by Homeland Security to identify the defendant).

IV.    **CONCLUSION**

MOTION FOR LEAVE                              19

For the foregoing reasons, Plaintiff respectfully requests this Court grant leave to Plaintiff to issue a Rule 45 subpoena to the ISP that assigned the Subject IP Address.

Respectfully submitted,

By: /s/ Paul S. Beik
Paul S. Beik
Texas Bar No. 24054444
BEIK LAW FIRM, PLLC
8100 Washington Ave., Suite 1000
Houston, TX 77007
T: 713-869-6975
F: 713-868-2262
E-mail: paul@beiklaw.com
**ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF CONFERENCE</u>

I hereby certify that I was unable to confer with Defendant because he or she has not yet been identified by investigation following the release bythe Internet Service Provider of the Subject IP address.

By: /s/*Paul S. Beik*